IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CLIFTON W. PANOS,<br><br>Plaintiff,<br><br>vs.<br><br>SUPREME COURT OF UTAH, et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER**<br><br>Case No:  2:05-CV-950 TC<br><br>District Judge Tena Campbell |

Clifton W. Panos filed suit under 42 U.S.C. §§ 1983 and 1985 against the Supreme Court of Utah; Chief Justice Durham; Associate Chief Justice Wilkins; Justices Durrant, Parrish, and Nehring; and Special Master Atherton in their individual and official capacities.  Panos challenges orders issued by the Utah Supreme Court that prohibit him from any contact with the state courts or court employees except through his attorney.  Because this court lacks subject matter jurisdiction over Panos' claims under the *Rooker-Feldman* doctrine, the court dismisses the complaint.

## FACTUAL BACKGROUND[1]

This case arises out of a dispute in the Utah courts over whether the late payment of a filing fee deprived the Utah Third Judicial District Court of jurisdiction to consider an appeal

---

[1]For clarity, the facts in Panos' complaint are supplemented by facts taken from the opinion of the Utah Supreme Court in *Panos v. Third Judicial District Court of Tooele County*, 103 P.3d 695 (Utah 2004), referred to by Panos in his complaint at 9.

from a small claims court decision.[2]  In October 2002, Panos was involved in a traffic accident

with Jennifer Castle in Tooele, Utah.  Panos sued Castle in the Tooele Justice Court to recover

his vehicle repair and rental costs.  The justice court first decided in favor of Castle.  However,

after Panos filed a motion for rehearing, the court revised its judgment and ordered Castle to pay

Panos damages in the amount of $2,465.43.[3]

On February 12, 2003, Castle filed a notice of appeal with a $70 filing fee seeking a trial

de novo in the Utah district court.  Panos moved to dismiss the appeal arguing that Castle's

failure to pay an additional $10 filing fee deprived the district court of jurisdiction over the

appeal.  On February 26, 2003, Castle sent a letter to the justice court acknowledging that she had

failed to submit the $10 fee and enclosed the fee at that time.  On March 17, 2003, District Court

Judge Randall Skanchy denied Panos' motion to dismiss Castle's appeal.[4]

The trial de novo in Third District Court was scheduled for April 8, 2003.[5]  However, on

April 7, 2003, Panos filed a petition for extraordinary relief [6] in the Utah Supreme Court against

the Utah Third District Court (Tooele Department) and Judge Randall N. Skanchy requesting that

the Utah Supreme Court prohibit the district court from proceeding with the trial de novo.[7]  The

---

[2]*Panos*, 103 P.3d at 696.

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]Although Panos refers to this document as a "petition for a writ of prohibition" (Complaint at 6, docket no. 3), the Utah Supreme Court calls it a "petition for extraordinary relief."  *See Panos*, 103 P.3d at 696.

[7]*Panos*, 103 P.3d at 696; Complaint at 6-7.

trial de novo took place as scheduled on April 8, 2003.  Judge Skanchy dismissed Panos' claim

against Castle for damages finding Panos had failed to meet his burden of proof.[8]

The Utah Supreme Court denied Panos' original petition for extraordinary relief in June

2003.  However, in August 2003, the Utah Supreme Court granted Panos' petition for rehearing

and ordered additional briefing.[9]  On October 29, 2004, the Utah Supreme Court issued its

opinion denying Panos' petition for extraordinary relief and all intervening motions.[10]

Apparently, Panos filed a second petition for rehearing which was denied on December 3, 2004.[11]

Panos then filed a Motion to Withdraw the Opinion.  But the Clerk of the Court refused

to file the motion.[12]  In a letter to Panos, the clerk explained that the Utah Supreme Court had

advised her to return all pleadings regarding the matter because the court had issued a decision in

the case; the case was closed; and the court had no jurisdiction to take further action.[13]

Not satisfied with the Clerk's explanation, Panos persisted in his attempts to have the

opinion withdrawn.  On March 7, 2005, Associate Chief Justice Wilkins responded to a February

8, 2005 letter from Panos.[14]  In his letter, Justice Wilkins explained that the Utah Supreme Court

had no process for considering Panos' motion to withdraw the opinion, that the court would not

---

[8]*Panos*, 103 P.3d at 696.

[9]*Panos*, 103 P.3d at 696-97.

[10]*Id.* at 699; Complaint at 7.

[11]*See id.* at 695.

[12]Complaint at 7.

[13]Letter from Clerk of Court to Panos, dated December 21, 2004, Ex. E to Complaint.

[14]Letter from Justice Wilkins to Panos, dated March 7, 2005, attached as Ex. F to the Complaint.

accept the motion, and would not consider withdrawing its opinion for any reason.[15]  Justice

Wilkins further emphasized that the case was closed, and the clerk of the court had been

instructed to reject any filings relating to it.[16]  Justice Wilkins warned Panos:

> So that there is no misunderstanding, let me make my point clearly:  Should you
> decide to contact any of the justices, their law clerks, staff of the court, or the
> clerk of the court, for any reason whatever, by any means whatever, you risk a
> citation for contempt.  The matters that have previously been before the court are
> now closed.  No further communication relating to them in any way will be
> permitted.  Should you make further use of the home addresses or telephone
> numbers of the justices or the clerk of court, or others on our staff, we will refer
> the matter to law enforcement for action, and will cite you for contempt.[17]

Justice Wilkins added that in the unlikely event that a new, presently non-existing appeal

on another matter should arise to which Panos was a party, he would be allowed to participate

fully as allowed by the rules of the court and state law.  Should such an event occur, however,

Panos would be required to restrain himself to official communication only, in writing, submitted

to the clerk's office.[18]

Despite the warning by Justice Wilkins, Panos went to the homes of each of the five

justices and taped the motion to their doors.[19]  This action resulted in a contempt of court charge

---

[15]*Id.* at 1.

[16]*Id.* at 2.

[17]*Id.*

[18]*Id.*

[19]Complaint at 7.

for which Panos received a sentence of thirty days in jail and $1,000 fine, with the sentence suspended except for five days in jail.[20]

On April 8, 2005, the court held a hearing on an order to show cause why Panos should not be held in contempt of court.  However, the hearing was continued until May 11, 2005 at the request of Panos' counsel.  The Order on Order to Show Cause from the April 8 hearing indicates that at the May 11, 2005 hearing the court intended to consider, in addition to matters previously raised, whether Panos should be held in contempt for submitting to the court a communication dated April 6, 2005.[21]  The April 8, 2005 order further states:

> The Order to Show Cause previously issued remains in full force and effect.  Its terms are supplemented by the following:
>
>   1.  All communications with this court shall be directed through Mr. Panos's counsel, Mr. James Valdez.
>
>   2.  Mr. Panos is prohibited from communicating in any manner whatsoever with any sitting or former judge of a Utah state court, or with the administrative office of the courts, or any employee thereof.[22]

At the order to show cause hearing on May 11, 2005, the court ordered that the terms and conditions imposed on April 8, 2005, remain in full force and effect.[23]  The court further ordered that proceedings be stayed for up to three months conditioned on Panos submitting to and complying with mental health counseling and treatment.[24]  Finally, the court ordered that "Mr.

---

[20]*Id.* at 7-8.

[21]Order on Order to Show Cause, dated April 8, 2005, at 1, attached as Ex. G to Complaint.

[22]*Id.* at 1-2; Complaint at 8.

[23]Order to Show Cause, dated May 25, 2005, at 1, attached as Ex. H. to complaint.

[24]*Id.* at 1-2.

Panos is expressly prohibited from contacting in any manner whatsoever any court organized under the laws of the state of Utah without first obtaining, through his counsel, permission from this court."[25]

On October 14, 2005, an order to show cause hearing was held before Judge Judith Atherton, acting as a special master with the duty of monitoring Panos' compliance with the order of the Utah Supreme Court.[26]  First, Judge Atherton noted that Panos was prohibited from communicating in any manner with a sitting or former judge of the Utah state courts or with the administrative office of the courts, or any employee thereof.[27]  Judge Atherton indicated that she had before her a letter from Panos dated August 29, 2005, sent to Justice Durham and to Judge Atherton; a letter dated September 14, 2005, sent to Justices Durham, Wilkins, Durrant, Nehring, Parrish, and Judge Atherton; a letter dated September 24, 2005, sent to Justices Durham, Wilkins, Durrant, Nehring, Parrish, and Judge Atherton; and a fax sent September 27, 2005 to Chief Justice Durham and Judge Atherton.[28]  Judge Atherton further noted that she had not received monthly reports of Panos' mental health treatment as ordered by the Utah Supreme Court.[29]

---

[25]*Id.* at 2; Complaint at 8.

[26]Transcript of October 14, 2005 hearing at 1, 9, attached to complaint.

[27]*Id.* at 2.

[28]*Id.* at 2-3.

[29]*Id.* at 3.

Judge Atherton then gave Panos an opportunity to explain his conduct.[30]  After listening to Panos' defense that his conduct was lawful, Judge Atherton found him in contempt of court for violating the order of the Utah Supreme Court.[31]  She imposed ten days jail time of the twenty-five days remaining on Panos' original thirty-day sentence imposed by the Utah Supreme Court.[32]  In addition, she ordered Panos to get a psychological evaluation to be completed before the next hearing to be held December 7, 2005.[33]

Panos alleges that the prohibition on his contact with the Utah courts violates his federal and state constitutional rights including his (1) right of access to the courts, (2) his right of free association and free expression, and (3) his right to equal protection.  He seeks a declaration that the Utah Supreme Court's orders violated his federal and state constitutional rights; and injunctive relief prohibiting further enforcement of the orders or the issuance of new orders.[34]

## DISCUSSION

Because Panos is appearing pro se, the court construes his pleadings liberally.[35]  Panos is proceeding without prepayment of fees under 28 U.S.C. § 1915.  Section 1915(e) provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . is

---

[30]*Id.*

[31]*Id.* at 9-10.

[32]*Id.* at 10.

[33]*Id.* at 10-11.

[34]Complaint at 12.

[35]*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

frivolous or malicious."[36]  A complaint "is frivolous where it lacks an arguable basis either in law or in fact."[37]  In this case, there is no arguable legal basis for relief on Panos' claim because the court lacks subject matter jurisdiction over it.  It is well settled that the lack of subject matter jurisdiction may be raised sua sponte by the court at any point in the proceedings.[38]

**A.  Panos' Claims Are Barred by the Rooker-Feldman Doctrine.**

The *Rooker-Feldman* doctrine is based on two United States Supreme Court cases interpreting 28 U.S.C. § 1257(a).[39]  Section 1257(a) provides that a final judgment rendered by the highest court of a state may be reviewed by the United States Supreme Court by writ of certiorari.[40]  The *Rooker-Feldman* doctrine is derived from the negative inference that if appellate court review of state court decisions is vested in the United States Supreme Court, it follows that such review is *not* vested in the lower federal courts.[41]  Thus, under the *Rooker-Feldman* doctrine, lower federal courts do not have jurisdiction to review judgments rendered by state courts.[42]

---

[36]28 U.S.C. § 1915(e)(2)(B).

[37]*Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Green v. Seymour*, 59 F.3d 1073, 1077 (10th Cir. 1995); *Fratus v. DeLand*, 49 F.3d 673, 674 (10th Cir. 1995).

[38]*McAlester v. United Air Lines*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982).

[39]*Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[40]*Crutchfield*, 389 F.3d at 1147.

[41]*Id.*

[42]*Crutchfield*, 389 F.3d at 1147; *Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"The *Rooker-Feldman* doctrine prohibits 'a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"[43]  Although Panos attempts to raise constitutional issues in his complaint, he essentially is asking this court to invalidate a decision of the Utah Supreme Court.

In apparent recognition that *Rooker-Feldman* bars his claims, Panos asserts that the doctrine does not apply in this case.[44]  First, Panos cites *Forchion v. Intensive Supervised Parole*,[45] in which the district court found that the *Rooker-Feldman* doctrine did not apply to the plaintiff's request for a preliminary injunction reinstating him to the New Jersey Intensive Supervision Program (ISP).  The court in *Forchion* held the *Rooker-Feldman* doctrine inapplicable because the ISP Resentencing Panel, consisting of three appointed judges, was an administrative, rather than a judicial body; there was no way to appeal its decisions; and because there had been, in fact, no decision by either the panel or a state court.  Thus, the federal district court was not reviewing a decision of a state court.[46]  Panos' claims are clearly distinguishable from *Forchion,* because Panos is attacking a decision of the Utah Supreme Court.

Next, Panos argues that this court has jurisdiction because there was a total absence of due process in the state court.[47]  This argument is without merit.  As discussed, "only the

---

[43]*Crutchfield*, 389 F.3d at 1147 (quoting *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998)).

[44]Complaint at 3-6.

[45]240 F. Supp. 2d 302 (D.N.J. 2003).

[46]*Id*. at 306.

[47]Complaint at 4-5.

Supreme Court can hear 'challenges to state court decisions in particular cases . . . even if those challenges allege that the state court's action was unconstitutional.'"[48]

Finally, Panos cites *Dubuc v. Michigan Bd. of Law Examiners,*[49] in which the Sixth Circuit held that the plaintiff's claims were not barred by the *Rooker-Feldman* doctrine.  Again, the *Dubuc* decision is distinguishable from this case.  As the Tenth Circuit has observed, "There is an exception to the *Rooker-Feldman* doctrine for general constitutional challenges to state laws."[50]  In *Dubuc*, the plaintiff did not explicitly challenge a decision of the Board of Law Examiners denying his application for membership in the bar or seek a declaration that the Board's decision violated his rights.  Rather, he sought relief from a bar rule requiring a waiting period before he could reapply.  In holding the *Rooker-Feldman* doctrine inapplicable, the Sixth Circuit observed that under *Rooker-Feldman*, a district court does not have jurisdiction to hear a challenge to a decision on bar admission, but the court "does have jurisdiction to hear 'a general challenge to the constitutionality' of  a bar admission rule."[51]  Thus, Dubuc's claims fell within the exception to the *Rooker-Feldman* doctrine.  In contrast, Panos is not challenging any state law.  He instead seeks in substance to have this court overturn a decision of the Utah Supreme Court, which a federal district court may not do.[52]

---

[48]*Crutchfield*, 389 F.3d at 1149 (quoting *Feldman*, 460 U.S. at 486).

[49]342 F.3d 610 (6th Cir. 2003).

[50]*Crutchfield*, 389 U.S. at 1149; *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir 2002).

[51]*Dubuc*, 342 F.3d at 618 (quoting *Feldman*, 460 U.S. at 483).

[52]*Crutchfield*, 389 F.3d at 1148.

Since Panos basically is asking this court to reverse a state court decision, this court is without subject matter jurisdiction.  If Panos has any remedy, it is in the Utah Supreme Court or the United States Supreme Court.[53]  Accordingly, the complaint should be dismissed for lack of subject matter jurisdiction.

**B.  This Case Is Also Subject to Dismissal Under the *Younger* Abstention Doctrine**

Panos asks this court to enjoin the Utah Supreme Court from enforcing its orders or issuing additional orders.[54]  It is well settled that a federal court may not issue an injunction in an ongoing state court proceeding.[55]  This principle is based on "the notion of 'comity,' that is, a proper respect for state functions."[56]  It appears from the exhibits submitted by Panos that some aspects of this matter are still pending in the state court before the special master.[57]  Thus the *Younger* abstention doctrine also dictates that this case should be dismissed.

---

[53]*See Crutchfield*, 389 F.3d at 1148.

[54]Complaint at 12.

[55]*See, e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971); *Juidice v. Vail*, 430 U.S. 327 (1977).

[56]*Juidice*, 430 U.S. at 334 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975)).

[57]See transcript of the October 14, 2005 hearing at 10-11 at which Judge Atherton set a further hearing in this matter.

**ORDER**

For the reasons set forth above, Panos' complaint is DISMISSED for lack of subject

matter jurisdiction.

DATED this 16th day of December, 2005.

BY THE COURT:

_____
Tena Campbell
United States District Judge